Bijan Esfandiari, CA Bar No. 223216
besfandiari@baumhedlundlaw.com
Mark Schlein, Trial Counsel
FL Bar No. 000700
mschlein@baumhedlundlaw.com
*(Pro Hac Vice to be submitted)*
BAUM HEDLUND ARISTEI & GOLDMAN, P.C.
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Tel: 310-207-3233
Fax: 310-207-4204

```
                        FILED
              CLERK, U.S. DISTRICT COURT

                    JUL - 3 2013

              CENTRAL DISTRICT OF CALIFORNIA
              BY                        DEPUTY
```

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: |
| *ex rel*. JEFFREY L. ROSE, | **EDCV13-1180** VAP (OP x) |
| PLAINTIFF AND RELATOR, | |
| v. | **FALSE CLAIMS ACT COMPLAINT AND DEMAND FOR JURY TRIAL** |
| PACIFIC CONSOLIDATED INDUSTRIES, LLC, a subsidiary of PCI HOLDING COMPANY, INC., | |
| DEFENDANTS. | **FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** |

Jeffrey L. Rose ("Relator") brings this action in the name of and on behalf of the United States of America ("United States") for treble damages and civil penalties arising from Defendant Pacific Consolidated Industries, LLC, a subsidiary of PCI Holding Company, Inc.'s (collectively referred to herein as "PCI") conduct in violation of the Federal Civil False Claims Act, 31 U.S.C. § 3729, *et seq*. ("FCA"). The violations arise out of false claims for payment made to the United States Navy ("NAVSEA") and the United States Department of Defense ("DoD") (hereinafter collectively referred to as "Government.")

## BACKGROUND

1.     PCI is and was a government "small business" vender and contractor. For more than 5 years, beginning at least as early as 2007, PCI provided equipment and materials under multiple government contracts for the production and provision of liquid oxygen generating plants ("LOX") for medical use in hospitals aboard United States Naval nuclear aircraft carriers.  These plants are designed to produce and store the medical grade liquid oxygen under very specific technical specifications based upon their intended use and military requirements.  Their cost is approximately one million, five hundred thousand dollars ($1,500,000) per unit and two are installed aboard each nuclear aircraft carrier.

2.     PCI's LOX could not meet one of the government's performance specifications with regard to the Rapid Pressure Swing Absorption unit (RPSA) and was therefore noncompliant with the contractual terms of the purchase.  In order to avoid a costly redesign or loss of the contract, PCI falsified test results on this key performance measure.  To deceive the government inspectors, prior to conducting the test PCI performed a secret welding of the manifold fittings on the test equipment.  This welding diverted the gaseous nitrogen flow to a closed chamber making it appear the RPSA remained at full gaseous nitrogen pressure for 24 hours as required by the contact, despite the fact that the equipment could not meet that specification.  In fact, none of the LOX plants built by Defendants can meet the contractual performance specification.

3.     As a result of the falsified testing data, the Government paid for at least six (6) LOX that failed the testing specifications and may be dangerous under military conditions or fail to provide the required oxygen supplies.

4.     This scheme resulted in false claims for payment being submitted to the government and the falsification of documents and records provided in support of those payment requests.  PCI's fraud resulted in unearned payments in the millions of dollars.

5.     PCI is a "small business" that manufactures ruggedized, onsite liquid and gaseous oxygen and nitrogen generating systems for the global defense, petroleum, and healthcare markets.  PCI was founded in 1984 to manufacture air separation devices for extreme and remote environments using cryogenic technology.

6.     Since its inception, PCI has obtained more than seven hundred and fifty (750) government contracts for more than one-hundred fifty-three million dollars ($153,000,000+) primarily related to its cryogenic technology.  PCI has received millions of dollars for the Liquid Oxygen Generating Plants that it has sold to the Department of Defense for use by the United States Navy ("NAVSEA").  PCI falsified the RPSA testing on every LOX plant sold to the government and none was able to meet the contractually required performance specification.

7.     Relator is an "original source" of the information upon which this Complaint is based, as that term is used in the False Claims Act.

8.     The facts and circumstances alleged in this Complaint have not been publicly disclosed in a criminal, civil or administrative hearing, nor in any congressional, administrative, or government accounting office report, hearing, audit investigation, or in the news media.

## FEDERAL JURISDICTION AND VENUE

9.     This court has jurisdiction over this civil action pursuant to 28 U.S.C. §1331, 28 U.S.C. §1367 and 31 U.S.C. §3732.

10.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391, because Defendant is found, has agents, has contacts, and transacts business and their affairs in this judicial district.

## PARTIES

11.     Defendant Pacific Consolidated Industries, LLC is a Delaware Limited Liability Company registered in California.  Its principal office and manufacturing

facility is located at 12201 Magnolia Avenue, Riverside, California, 92503.  Its website is found at http://pci-intl.com/.

12.     PCI Holding Company, Inc. is a Delaware corporation formed in 2012 and has, for its principal place of business 12201 Magnolia Avenue, Riverside, California, 92503. PCI Holding Company, Inc. is a privately held corporation.

13.     The Department of Defense, United States Navy and the United States Air Force have solicited and entered into contracts with PCI for the provision of cryogenic equipment and plants.[1]

14.     Plaintiff/Relator Jeffrey L. Rose resides in Claremont, California.  He was hired in 2006 by PCI as a lead mechanic and the company's only level III mechanic specializing in cryogenics and air separation.  Relator's job at PCI was to build air separation plants (LOX) for the United States Navy.  These cryogenic units operate at -320 f and provide the medical oxygen used in hospitals aboard nuclear aircraft carriers. Each aircraft carrier is fitted with two LOX units supporting their onboard hospital.

15.     Relator remained with PCI as a lead Mechanic III until October 26, 2012, when he and other employees were laid off by the company.

16.     Relator is currently employed as an assembly test technician for VACCO Industries.  VACCO is a leading designer and manufacturer of specialty valves, filters and advanced fluid control products for defense, space, and commercial markets.

**INDIVIDUAL PARTICIPANTS**

17.     Javier Lopez was and is an employee of PCI.  He was the test mechanic involved in rigging the RPSA testing by secretly welding the manifold fittings on the test equipment.  He disposed of the rigged fittings after the tests had been completed and the Government Inspectors had "signed off" reflecting that the LOX had passed this crucial test.

---

[1]   These include, but are not limited to N6554005C0007 /P00007 ($2,481,854); N6554005C0007 /P00001 ($1,321,083).

4                          False Claims Act Complaint

18.   Mark Oprzadek, the testing supervisor and Lopez's immediate supervisor, was aware of and may have directed the corrupted testing.  Oprzadek was laid off by PCI on October 26, 2012.

19.   Steve Hudson was and is an employee of PCI and Relator's immediate supervisor.  Hudson supervised project employees on the plant floor.

20.   Dwayne Krcelic, the operations manager, was and is an employee of PCI and is Hudson's immediate supervisor.

21.   Tom Lloyd, a mechanical engineer, is and was employed by PCI and had responsibility for resolving technical issues referred to him by Relator and Hudson. Lloyd was responsible for making all of the entries into the TRAVELER, the production journal that is provided for and accompanies each LOX unit.  The TRAVELER documents every step in the production process, including all testing.

22.   Dave Scheierl was the chief engineer for PCI and Tom Lloyd's immediate supervisor.

## FEDERAL FALSE CLAIMS ACT

23.   The False Claims Act (hereinafter referred to as "FCA"), 31 USC § 3729, was originally enacted in 1863, and was substantially amended in 1986 by the False Claims Amendments Act, Pub.L. 99-562, 100 Stat. 3153.  The FCA was further amended in May 2009 by the Fraud Enforcement and Recovery Act of 2009 ("FERA") and again in March 2010 by the Patient Protection and Affordable Care Act ("PPACA").  Congress enacted the 1986 amendments to enhance and modernize the Government's tools for recovering losses sustained by frauds against it after finding that federal program fraud was pervasive.  The amendments were intended to create incentives for individuals with knowledge of Government fraud to disclose the information without fear of reprisal or Government inaction and to encourage the private bar to commit resources to prosecuting fraud on the Government's behalf.  Both FERA and PPACA made a number of procedural and substantive changes to the FCA in

an attempt to ease the burden on the government and Relator in investigating and prosecuting *qui tam* suits under the FCA.

24.    The False Claims Act generally provides that any person who knowingly presents, or causes to be presented, false or fraudulent claims for payment or approval to the United States Government, or knowingly makes, uses, or causes to be made or used false records and statements material to a false claim, or conspires to engage in such conduct, is liable for a civil penalty ranging from $5,500 up to $11,000 for each such claim, plus three times the amount of the damages sustained by the Federal Government.

25.    The FCA defines the term "knowingly" to include actual knowledge, actions in deliberate ignorance of the truth or falsity of the information or acts in reckless disregard of the truth or falsity of the information.  No proof of specific intent to defraud is required.  31 U.S.C. §3729 (b)(1)(A) and (B).

26.    The Act allows any person having information about false or fraudulent claims to bring an action for himself and the Government, and to share in any recovery. Based on these provisions, Relator seeks, through this action, to recover all available damages, civil penalties, and other relief for the federal violations alleged herein.

## FACTUAL BASIS FOR FALSE CLAIMS

27.    PCI contracted with the Department of Defense and the United States Navy to manufacture and provide eleven (11) Liquid Oxygen Generating Plants (LOX).  The contract provided that the units would be delivered over a period of about seven years at a price of approximately one million, five-hundred thousand dollars ($1,500,000) per unit.  PCI produced the units in production increments of two, since two units are installed aboard each aircraft carrier.

28.    The Liquid Oxygen Generators which were part of the LOX produce five gallons per hour ("GPH") of oxygen.  The plants use "Rapid Pressure Swing Absorption" (RPSA) to produce gaseous oxygen which is then liquefied using a close loop

nitrogen refrigeration system.  The plants are designed to produce and store the liquid oxygen on board US Navy aircraft carriers.[2]  If the RPSA unit fails, the LOX unit cannot produce gaseous oxygen.

29.    The PCI LOX has four basic components: (a) Liquid oxygen tank; (b) Compressor; (c) Cold box; and (d) Rapid Pressure Swing Absorption unit (RPSA).

30.    A PCI LOX plant is shown below:



31.    The government contract with PCI requires that the units meet numerous technical performance specifications.  To demonstrate compliance, each PCI unit must pass a variety of test inspections during the production process.  These inspections are performed by PCI test mechanics and witnessed by government inspectors.

32.    Seven (7) PCI units have been produced, of which the Relator built the last five.  Of those seven units, six have been delivered to the United States Navy.[3]  The one unit that the government knew failed to meet testing requirements has been held at PCI for about two years while negotiations with the DoD continue.  Ironically, the failed unit

---

[2]  http://pci-intl.com/index.php?option=com_content&view=article&id=112&Itemid=157

[3]  One unit failed a production test that is unrelated to the issues in this case.  In that failed test, a water cooling pump that was required to run continuously for 250 hours failed after 249 hours.  That failed unit has been held at the PCI plant for more than two years pending resolution of the problem to the government's satisfaction.  Resolution will require either a reengineering of the failed component or a relaxation of the government's contract specifications.  This demonstrates the serious implications of a failed test.

had already passed the rigged RPSA test and it can easily be retested to demonstrate the fraudulent test process.

33.    Pursuant to the contracts between the government and PCI, each step of the production / inspection process is recorded in the "TRAVELER."  The TRAVELER is a detailed multi-page journal type document that accompanies each LOX unit and is intended to record each and every step in the production process.

34.    All test results are noted in the TRAVELER.  If a unit fails any test, production must stop until the problem is solved and the unit can pass the required testing.

35.    One test required by the government was to ensure that the RPSA would hold under full gaseous nitrogen pressure for 24 hours.  PCI management knew that, because of its design, the RPSA could not pass this required pressure test and meet contractual specifications.

36.    PCI could have admitted this design problem to the government.  The government could have required an expensive and time consuming re-engineering of the LOX, with no assurance of success.  In the alternative, the government could have been persuaded to deviate from its contractual specifications.  PCI decided instead to intentionally defraud the government by falsifying the testing data.

37.    Rather than admit the problem to the government, PCI decided to fraudulently "rig" the 24 hour pressure tests in such a way that the LOX would *appear* to pass the test.  This rigging involved welding the test manifold fittings in such a way that the gaseous nitrogen pressure was diverted into a closed chamber and not actually through the RPSA.  After testing was complete, PCI disposed of the rigged manifold fittings.

38.    Government inspectors rely on the contractor to provide accurate and calibrated test equipment and to conduct the actual testing and were unaware that the test process had been corrupted.

39.     Before the 24 hour RPSA pressure testing began, PCI, through its agent and employee, Javier Lopez and possibly others, "rigged" the LOX so that it would appear to the inspector(s) to be performing within the specifications.

40.     The government inspector could not and did not discover the rigged equipment by observing the test.  The inspector was successfully deceived as to each of the six units completed, delivered and paid for by the government.

41.     The government inspector and the PCI test technician must physically stamp each unit's TRAVELER to document that a particular test was completed successfully.  These documents, which were maintained by Tom Lloyd, were made available to the government and their inspectors in support of payment requests.

42.     The Relator, who is very familiar with the design of the LOX, knew it could not pass the RPSA pressure test.  In fact, this design problem was known to management and many of the mechanics and supervisors.  Relator could not understand how the RPSA was able to pass the pressure test.

43.     In about June, 2010, Relator was in the testing area after a RPSA pressure test had just been successfully completed.  The LOX unit had "passed" and the government inspector had signed off on the test results in the TRAVELER.  After the inspector left the premises, Relator saw Javier Lopez removing the improperly welded pressure manifold fittings in the test equipment.

44.     Relator observed the unit and knew that the test had been rigged.

45.     When Javier Lopez realized that Relator saw the dismantling of the test equipment, he told the Relator, "You weren't supposed to see that.  We can get into real trouble if the Navy finds out."

46.     Relator understood this comment to reflect Lopez's guilty knowledge that what he did resulted in false test results which deceived the government inspector.  The RPSA design problem is common knowledge at PCI and Relator believes Lopez was told by management to do whatever it took to get the RPSA to pass the test.

47.    Each PCI LOX unit delivered to the Navy was fraudulently rigged to pass the pressure test and did not meet required contractual specifications.

48.    Each PCI unit's "TRAVELER" contained falsified RPSA test results which were unknowingly approved by the government.

49.    Had the government known that the LOX RPSA units could not pass the 24 hour pressure testing, they would not have accepted the completed units or paid the millions of dollars that were paid to PCI based upon its noncompliant product and false claims.

## CAUSES OF ACTION

### First Cause Of Action

**False Claims Act**
**31 U.S.C. §3729(a)(1)(A)(2010)**

50.    Plaintiff/Relator repeats and realleges each allegation contained in paragraphs numbered 1 through 49 above as if fully set forth herein.

51.    This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, as amended.

52.    Defendants, individually and by and through their officers, agents, employees, related companies, subsidiaries, contractors and customers, knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval in violation of 31 U.S.C. §3729(a)(1)(A)(2010).

53.    Defendants, individually and by and through their officers, agents, and employees, authorized and encouraged the actions of their various officers, agents, and employees to take the actions set forth above and/or acted in deliberate ignorance of the truth or falsity of the information and/or in reckless disregard of the truth or falsity of the information.

54.    As a result of the acts of Defendants the United States Department of Defense, United States Navy and other government agencies paid Defendants millions

of dollars for Oxygen Generating Plant Units and parts for those units which did not meet the specifications and requirements of the government contracts.

55.     By reason of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

56.     Without the described fraudulent and illegal conduct by Defendants, the government would not have accepted or paid for these products and materials.

57.     As set forth in the preceding paragraphs, Defendants have knowingly violated 31 U.S.C. § 3729 *et seq.* and have thereby damaged the United States Government.  The United States is entitled to three times the amount by which it was damaged, to be determined at trial, plus a civil penalty of not less than $5,500.00 and not more than $11,000.00 for each false claim paid or approved.

WHEREFORE, Relator respectfully requests this Court enter judgment against the Defendants and each of them as follows:

(a)     That the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims alleged within this Complaint, as the Federal Civil False Claims Act, 31 U.S.C. § 3729 *et seq.* provides;

(b)     That civil penalties of $11,000 be imposed for each and every false claim that Defendant(s) caused to be presented to the Government and military units under the Federal False Claims Act;

(c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which Relator necessarily incurred in bringing and pressing this case;

(d)     That Relator be awarded the maximum amount allowed pursuant to the Federal False Claims Act; and

(e)     That the Court award such other and further relief as it deems proper.

## Second Cause Of Action

### False Claims Act—False Records and Statements
### 31 U.S.C. §3729(a)(1)(B)(2010)

58.     Plaintiff/Relator repeats and realleges each allegation contained in paragraphs 1 through 49 above as if fully set forth herein.

59.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, as amended.

60.     Defendants by and through their officers, agents, employees, related companies, subsidiaries, contractors and customers, by virtue of the acts described above, and for the purpose of defrauding the Government, knowingly made, used and/or caused to be made or used, false or fraudulent records or statements to get false and fraudulent claims paid or approved, within the meaning and in violation of 31 U.S.C. § 3729(a)(1)(B)(2010).

61.     Defendants, individually and by and through their officers, agents, and employees, authorized and encouraged the actions of their various officers, agents, contractors and employees to take the actions set forth above and/or acted in deliberate ignorance of the truth or falsity of the information and/or in reckless disregard of the truth or falsity of the information.

62.     By reason of Defendants' acts and omissions, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants and each of them, as follows:

(a)     That the United States be awarded damages in the amount of three times the damages sustained by the U.S. because of the false claims alleged within this Complaint, as the Federal Civil False Claims Act, 31 U.S.C. § 3729 *et seq.* provides;

(b)     That civil penalties of $11,000 be imposed for each and every false claim (including records and statements) that Defendants fabricated or caused to be presented to the Government and its military under the Federal False Claims Act;

(c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which Relator necessarily incurred in bringing and pressing this case;

(d)     That Relator be awarded the maximum amount allowed pursuant to the Federal False Claims Act; and

(e)     That the Court award such other and further relief as it deems proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of Federal Rules of Civil Procedure, Plaintiff/Relator hereby demands a trial by jury.

Dated:  July 1, 2013                          Respectfully submitted,

Mark Schlein, Trial Counsel
The Florida Bar No. 000700
BAUM HEDLUND ARISTEI & GOLDMAN, P.C.
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Tel: 310-207-3233  Fax: 310-207-4204
mschlein@baumhedlundlaw.com

*Attorneys for Relator Jeffrey L. Rose*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Virginia A. Phillips and the assigned discovery Magistrate Judge is Oswald Parada.

The case number on all documents filed with the Court should read as follows:

## EDCV13- 1180 VAP (OPx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)     NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
UNITED STATES OF AMERICA AND THE STATE OF CALIFORNIA,
ex rel., Jeffrey L. Rose

**DEFENDANTS**
Pacific Consolidated Industries, LLC, a subsidiary of PCI Holding Company, Inc.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing
yourself, provide same.)

Bijan Esfandiari and Mark Schlein
Baum Hedlund Aristei & Goldman, P.C.
12100 Wilshire Blvd., Suite 950, Los Angeles, CA 90025 / 310-207-3233

Attorneys (If Known)

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☑ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No  ☑ **MONEY DEMANDED IN COMPLAINT: $** Exceeds $75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
31 U.S.C. 3729

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☑ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

---

**FOR OFFICE USE ONLY:**   Case Number: _EDCV13-1180_

COPY

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)    ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                                ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                                ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                                ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX.  VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)    List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☑   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  |  |

(b)    List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Pacific Consolidated Industries, LLC - Riverside County<br>PCI Holding Company, Inc. - Riverside County |  |

(c)    List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County |  |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER):    _____    **Date** July 1, 2013

   **Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |